*108
 
 Battle, J.
 

 All tlie matters in contest between the parties have been settled and adjusted, by a former decree in the cause, except the question, whether the executor of Nathaniel P. Thomas shall be charged the value of certain slaves, who died between the time of the death of the testator and the period when they were to be delivered up to his legatees. The testator, in his will, had directed as follows : “ That the negro slaves, given to my son Junius, and daughters, Yirginia and Nebecca, shall be left and worked on my home tract of land, given to my son Junius, for the mutual support of my said daughters and son ; each of my said daughters to receive their share on their arriving at lawful age or marrying. And the said place, if they desire it, is to be their home as well as that of my son Junius. Until that time, the said negro slaves to be placed under the direction of a suitable overseer, and in the employment of such an overseer, a preference is to be given to my friend William Bryant, if his services can be procured at a reasonable price, to be judged of by my executor.” In the course of his settlement of the estate, the executor ascertained that it was much more indebted than the testator seemed to suppose, and that to pay the debts, he would have to sell property specifically devised and bequeathed. He accordingly procured an order of the Court of Equity for Caswell county, to sell the home tract which had been devised to the devisor’s son Junius, and upon which the slaves were directed to be kept, according’ to the provision of the above recited clause of the will. In the bill which the executor caused to be filed for the sale of this tract of land, it was alleged that the sale would be for the best interests of the infant owners, but nothing was said about the necessity of the sale for the payment of debts. Lands devised to the devisor’s daughters, wore also sold, under an order of the same court, at the instance of the executor, upon an allegation, not only that the best interests of the infants would be promoted by it, but also that it was necessary for the purpose of paying debts, with, the view to prevent the sale of slaves for that purpose. The sale of all the land was made by the clerk and master, and
 
 *109
 
 reported by him to the Court, which, by an order, confirmed the sale, and, upon the purchase-money being paid, directed titles to be made to the purchasers. After the home tract had been sold, the executor hired out the slaves bequeathed to the testator’s son Junius, and his daughters, Yirginia and Eebecca, until they were delivered to the legatees, during which time several of the negro children died.
 

 The counsel for the plaintiffs contend that the executor violated his duty by selling the home tract of land, contrary to the express provisions of the will, which he had undertaken to execute ; that in consequence of such sale, he had himself made it necessary to hire out the women and children, whereby they were not properly taken cars of, and several of the children died, and that the executor ought to bear the loss. Eor this position, the counsel cite, and rely on, the authority of the case of
 
 Beall
 
 v.
 
 Darden, 4
 
 Ire. Eq. Rep.
 
 76.
 

 The counsel for the representative of the executor, who is now dead, contends on the contrary, that the executor ought not to be held responsible for the loss. 1st. Because the land was sold by an order of a court having jurisdiction of the eause, and the propriety of the sale cannot now be impeached collaterally in the present suit. 2ndly. That a sale, either of land or of slaves, was necessary to pay the testator’s debts, and if it be supposed that the executor erred in selling the land instead of the slaves, it was only an error of judgment, for which, if ho acted
 
 Iona fide,
 
 he ought not to suffer; and that he acted in good faith, could not be doubted, because he was in no way himself benefited by the sale of one kind of property more than the other. 3rdly. That it did not appear that the plaintiffs were, upon the whole, injured more by the sale of the land than they would have been by the sale of the slaves.
 

 In support of his first ground, the counsel relies upon the case of
 
 Harrison
 
 v.
 
 Bradley,
 
 5 Ire. Eq. Rep. 136; but it is unnecessary for us to consider' it, as we are satisfied that the case is, with him, upon his second and third grounds. In the ease of
 
 Beall
 
 v.
 
 Darden,
 
 above referred to, it was held that
 
 *110
 
 where an executor delays an unreasonable time, as for instance, three years, to sell slaves, whom it is his duty to sell, and they are then lost, he will be answerable to the creditors, for their value as assets. So, where an executor or administrator is guilty of gross neglect in suffering slaves to remain with an improper person as bailee, for a long period, and they are sold by him, so as to be lost to the estate, the executor, or administrator, will be answerable for their value to the legatees or next of kin. But in the same case, it is said that an executor, like any other trustee, is not to be held liable as an insurer, or for any thing but malafides, or want of reasonable diligence. "We do not controvert these positions; on the contrary, we admit their correctness, and intend to apply them as a test to the present case.
 

 The executor, having sold the home tract of land, contrary to the directions of his testator’s will, is to be considered as having
 
 prima facie
 
 acted in bad faith, and the burden of ■showing that he acted
 
 "bona
 
 fide, and- as a man of ordinary prudence would, or might have done, under similar circumstances, is thrown upon him. This, we think, he has done, by showing that the estate was in debt, and that it ivas absolutely necessary to sell, either land or negroes, to pay the debts. An exigency had occurred, not foreseen, and therefore, not provided for by the testator; for he no more expected the slaves, which he had specifically bequeathed, would be sold, than that the land would be disposed of. Had the slaves been sold instead of the land, they could not have been kept together •on the home tract, and thus the testator’s will would have been disappointed as much as it was by the sale of the land. The executor, then, wras in a strait, and yet he must do the one thing or the other, sell land or sell negroes; for the debts ■must be .paid. Is it certain that he did not act for the best in selling the land
 
 %
 
 Does it any where appear, that the increase of the slaves, notwithstanding the death of some of them, and the rise in the value of the others, did not make them to be worth as much to the legatees when they received them, as the land would have been worth, had that been kept? An
 
 *111
 
 other consideration must not be overlooked. The testimony shows that not one of the children, who died in this State, did so from the want of proper attention. Two of the most valuable of them died of scarlet fever in the possession of the executor, on one of the plantations left by the testator, and under the care of the testator’s favorite overseer, 'William Bryant. Others were infants, from one to two or three years old, and died from the effects of teething. The remainder died in Virginia, in the possession of Wm. Thomas, a brother of the testator, who had very shortly after the testator’s death, taken them by force from the home tract, and carried them out of the State. Eor those, thus carried off against the will of the executor, we presume there can be no pretense to hold him responsible ; and as to those who died in this State, is it certain, or even more probable, that the scarlet fever and teething might not have caused their death on the home plantation as well as any where else ? We are by no means satisfied that the plaintiffs were not, on the whole, as much benefited by the executor’s keeping the negroes, as they would have been by his keeping the land. But if that were not so, and it were an error to sell the land instead of the slaves, it was a mere error of judgment, committed in good faith, and one which any man of ordinary prudence might have committed. The’executor was not intended to be, nor was he in fact, benefited by it, and it would, therefore, be too broad a rule to make him responsible for a loss which did not, after all, follow as a necessary, or even a probable, consequence of his acts. It must be declared, then, that the estate of the executor shall not be charged with the value of the deceased slaves in question, and the exception is therefore overruled.
 

 Bee Cubiam, Decree accordingly.